UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | § | CIVIL ACTION NO. |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | _____ |
| LIBERTY INSURANCE UNDERWRITERS INC., | § | |
| | § | |
| Defendant. | § | |

# COMPLAINT

## THE PARTIES

1.  Plaintiff Southwest Airlines Co. ("Southwest") is a major American airline. It is a Texas corporation with its principal place of business at 2702 Love Field Drive, HDQ-4GC, Dallas, Texas 75235-1611.

2.  Defendant Liberty Insurance Underwriters Inc. ("Liberty") is an insurance company operating and existing under the laws of the State of Illinois with its principal place of business at 55 Walter Street, 23rd Floor, New York, New York 10041.

## JURISDICTION AND VENUE

3.  There is diversity jurisdiction under 28 U.S.C. §1332(a)(1) because Southwest is a citizen of the State of Texas, Liberty is a citizen of the States of Illinois and New York, and the amount in controversy is at least $10 million, exclusive of interest and costs.

4.     Venue is proper in this district under 28 U.S.C. §1391(b)(2) because Liberty issued the insurance policy that is the subject of this lawsuit to Southwest in Dallas, Texas.

5.     Personal jurisdiction is based on the Texas Long-Arm Statute because Liberty, a non-resident, contracted with Southwest, a Texas resident, "and either party is to perform the contract in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE §17.042(1).

## FACTUAL BACKGROUND

*Southwest's Primary Insurance Policy*

6.     From June 1, 2016 to June 1, 2017, Southwest was insured by AIG/Illinois National Insurance Company pursuant to a comprehensive specialty risk policy, No. 01-424-32-51 (the "Primary Policy"). A copy of the Primary Policy is attached as **Exhibit A** (Pl. App. 0001 to 0082) and incorporated herein by reference.

7.     The Primary Policy contained a System Failure Coverage Endorsement (Endorsement No. 21) with a $10 million sublimit. Endorsement No. 21 provided coverage for "Loss" greater than the policy retention ($2.5 million) that Southwest incurs after the Waiting Hours Period (12 hours) as the result of a "System Failure." *See* Ex. A (End. No. 21) at Pl. App. 0072 to 0075.

8.     Endorsement No. 21 defined "System Failure" as "any unintentional and unplanned outage of a Computer System." *See* Ex. A (End. No. 21) at Pl. App. 0073.

9.     The Primary Policy defined "Loss," in relevant part, as:

[T]he below listed costs incurred within 120 days after the end of a Material Interruption (or 120 days after the Material Interruption would have ended if an Insured exercised due diligence and dispatch):

(1) costs that would not have been incurred but for a **Material Interruption**; and

(2) the sum of all following, which shall be calculated on an hourly basis:

> (a) Net Income (Net Profit or Loss before income taxes) that would have been earned; and
>
> (b) Continuing normal operating expenses incurred, including payroll; provided, however, such sum shall not exceed ten percent (10%) of the **System Failure Sublimit** during any one hour period and any amount in excess of ten percent (10%) of the **System Failure Sublimit** during any one hour period shall not be **Loss**.
>
> With respect to subparagraphs (1) and (2) above, **Loss** shall be reduced by any amounts recovered by an **Insured** (including, without limitation, the value of any service credits provided to an **Insured**) from any third party (including, without limitation, any **Outsource Provider**) in connection with or as a result of a **System Failure**.
>
> (3) costs to reroute or reschedule passenger travel that would not have been incurred but for a **Material Interruption**.
>
> (4) any civil fine or penalty imposed by the Department of Transportation or Federal Aviation Administration that would not have been incurred but for a **Material Interruption**, unless the civil fine or penalty imposed is uninsurable under the law of the jurisdiction imposing such fine or penalty. Solely with respect to the coverage afforded herein, the maximum liability of the **Insurer** from all Loss arising from any civil fine or penalty imposed by the Department of Transportation or Federal Aviation Administration arising from a **Material Interruption** shall be $2,000,000.

*See* Ex. A (Primary Policy, Network Interruption Coverage Section, Clause 2(e) (Pl. App. 0034 to 0035), as modified by the Loss Definition Amendatory Endorsement (End. No. 18) (Pl. App. 0069) and System Failure Coverage Endorsement (End. No. 21) (Pl. App. 0073)).

10. Endorsement No. 21 defined "Material Interruption" as "the actual and measurable interruption or suspension of an Insured's business directly caused by a Security Failure or a System Failure." *See* Ex. A (End. No. 21) (Pl. App. 0072).

*Southwest's Excess Insurance Policies*

11. In addition to the $10 million Primary Policy, Southwest had additional insurance coverage for the System Failure loss pursuant to a series of excess policies. The excess policies follow form to the Primary Policy.

12.     After the Primary Policy, Southwest was insured by a Lloyd's policy, No. B0146CYUSA1600486, for $20 million excess of $10 million.

13.     After the Lloyd's policy, Southwest was insured by a Zurich/Steadfast Insurance policy, No. SPR 91553-02, for $10 million in excess of $30 million.

14.     After the Zurich/Steadfast Insurance policy, Southwest was insured by an XL Catlin policy, No. MTE903084802, for $10 million excess of $40 million.

15.     After the XL Catlin policy, Southwest was insured by a Liberty policy, No. E04NAAY4YC003, for $10 million excess of $50 million (the "Liberty Policy").

16.     A copy of the Liberty Policy is attached as **Exhibit B** (Pl. App. 0083 to 0095) and incorporated herein by reference.

17.     After the Liberty Policy, Southwest was insured by a Sompo International/Endurance policy, No. PRX10007131901, for $10 million excess of $60 million.

18.     After the Sompo International/Endurance policy, Southwest was insured by a NAS/Swiss Re policy, No. TCE 0008363 03, for $15 million excess $70 million.

*Southwest's System Failure Loss*

19.     On July 20, 2016, Southwest suffered a computer system failure that caused a long-term outage resulting in the cancellation of thousands of flights and a material interruption of business operations over a multi-day period (the "System Failure").

20.     After all of the network systems and applications were recovered, a backlog of data existed in the infrastructure. The large size of the backlog of data and transactions that had to flow through the system before operations could be restored required additional time and effort. As a result, flight operations were not able to resume normally until approximately 12:00 p.m. CDT on July 23, 2016.

21. As a result of the System Failure, Southwest incurred substantial monetary loss which it documented and submitted to its insurance carriers for payment.

22. Southwest's insurance claim for the System Failure exceeds $77 million. The claim is comprised of the two basic categories of Loss recognized by the Primary Policy and the follow-form excess policies: Material Interruption Costs and Lost Income.

23. Southwest's Material Interruption Costs total $45,101,333, summarized as follows:

| | |
|---|---:|
| FareSaver Promo | $16,563,656 |
| Interrupted Trip Expenses | $10,155,492 |
| Vouchers | $6,644,801 |
| Rapid Reward Points | $3,561,363 |
| Flight Operations (Pilots) - Salaries, Wages, & Expenses | $2,876,720 |
| Flight Attendants - Salaries & Wages | $1,947,335 |
| Advertising | $1,217,921 |
| Ground Operations - Salaries & Wages | $953,850 |
| Customer Service - Salaries, Wages, & Expenses | $687,221 |
| Baggage Claims | $424,464 |
| Aircraft Maintenance Salaries & Wages | $68,510 |

24. Southwest's Lost Income totals $32,281,446, summarized as follows:

| | |
|---|---:|
| Cancelled Trips Revenue | $21,985,849 |
| Lost Bookings Revenue | $13,792,671 |
| Miscellaneous Revenue | $2,185,952 |
| Cargo & Freight Revenue | $112,323 |
| Saved Outside Repairs & Maintenance Expense | ($714,679) |
| Saved Miscellaneous Expense | ($1,688,395) |
| Saved Fuel Expense | ($3,392,275) |

*Southwest's Insurance Claim*

25. On April 13, 2017, Southwest submitted its initial, written, and sworn proof of loss to AIG/Illinois National Insurance Company, the carrier that issued the Primary Policy.

26. In consultation with its insurance carriers, Southwest established an on-line Share File site in which it uploaded all documents and information pertaining to the cause of the System

Failure and calculation of Southwest's loss as a result of that failure. All the insurance carriers, including Liberty, had access to that Share File site.

27. Moreover, Southwest responded to numerous inquiries and requests for additional information raised by its insurance carriers as they investigated the loss. Southwest also hosted a meeting with representatives of the insurance carriers, including Liberty, at its headquarters in Dallas in October 2017.

28. After thoroughly investigating Southwest's claim, and after Southwest satisfied its $2.5 million retention, the primary carrier, Illinois National, paid Southwest full policy benefits of $10 million under the Primary Policy. Form-following excess carriers Lloyd's, Zurich/Steadfast and XL Catlin likewise paid their respective full policy benefits.

*Liberty Wrongfully Refuses to Pay Southwest's Claim*

29. Liberty is the next form-following excess carrier obligated to pay its policy benefits for the System Failure.

30. In an ongoing effort to satisfy Liberty's requests for information, Southwest agreed to a second in-person meeting with Liberty to address any remaining questions Liberty had regarding Southwest's proof of loss. This meeting took place in New York on November 7, 2018.

31. After the meeting in New York, and after yet further correspondence from Liberty, Southwest requested that Liberty provide Southwest with its formal coverage position. In a letter dated December 21, 2018, Liberty agreed that the System Failure is a covered claim under the Liberty Policy. Nevertheless, Liberty has taken the wrongful position that the amount of Southwest's loss is not sufficient to trigger the Liberty Policy.

32. On February 14, 2019, Southwest provided a written response to Liberty's letter, including further detail and analysis of its claim and loss calculations. Moreover, Southwest again demanded that Liberty pay full benefits under the Liberty Policy for the System Failure claim.

33. Southwest has fully documented and presented its claim to Liberty and made repeated demands for Liberty to pay its full policy benefits. Liberty has refused to honor its policy obligations and has refused to pay its full policy benefits for the System Failure claim. Liberty's decisions have left Southwest with no choice but to file this lawsuit.

## FIRST CAUSE OF ACTION (DECLARATORY RELIEF)

34. Southwest incorporates all paragraphs of its Complaint as if fully rewritten herein.

35. A controversy has arisen between Southwest and Liberty as to their respective rights and duties under the Liberty Policy and the Primary Policy.

36. Southwest seeks a judicial determination of the respective rights and obligations of Southwest and Liberty under the Liberty Policy and Primary Policy.

37. Specifically, Southwest asserts that: (a) the Primary Policy and the Liberty Policy cover Southwest in connection with the System Failure claim; and (b) Southwest's loss from the System Failure Claim exceeds the limits of the Liberty Policy, such that Liberty must pay Southwest full policy benefits.

38. The judicial determination is necessary and appropriate at this time and under the circumstances so that Southwest may ascertain its rights. The controversy is incapable of resolution without judicial intervention and adjudication. Southwest has no plain, speedy or adequate remedy at law.

## SECOND CAUSE OF ACTION (BREACH OF CONTRACT)

39. Southwest incorporates all paragraphs of its Complaint as if fully rewritten herein.

40. The Liberty Policy, which follows form to the Primary Policy, is a valid contract between Southwest and Liberty, and provided policy benefits of $10 million per claim and in the aggregate, in excess of the $50 million policy benefits provided by the underlying policies.

41. Southwest has fully performed its obligations under the Liberty Policy and the Primary Policy, including paying all premiums owed for the policy benefits and complying with all other contractual obligations and conditions.

42. Liberty has breached the terms of the Liberty Policy by failing to pay to Southwest its full policy benefits for the System Failure claim.

43. As a direct and proximate result of Liberty's breach of the Liberty Policy, Liberty has deprived Southwest of the benefits of the insurance coverage for which it paid substantial premiums.

44. As a direct and proximate result of Liberty's breach of the Policy contract, Southwest has suffered and will continue to suffer substantial damages in an amount to be determined at trial, including but not limited to: (a) full policy benefits; (b) pre-judgment interest; (c) post-judgment interest; and (d) all attorneys' fees and costs recoverable under TEX. CIV. PRAC. & REM. CODE §38.001(8).

45. All conditions precedent to the bringing of this breach of contract claim have been performed or are excused. Specifically, and without limitation, as required by the dispute resolution process provision of the Primary Policy, before filing this lawsuit, Southwest first commenced a mediation proceeding with Liberty, as required by the dispute resolution process in the Primary Policy. The mediation occurred on June 4, 2019, more than ninety days before the filing of this lawsuit.

## THIRD CAUSE OF ACTION (BAD FAITH INSURANCE PRACTICES)

46. Southwest incorporates all paragraphs of its Complaint as if fully rewritten herein.

47. As an insurance company operating in the State of Texas, Liberty is subject to the common law and statutes governing bad faith insurance practices in Texas including, without limitation, Chapters 541 and 542 of the Texas Insurance Code.

48. In violation of its common law and statutory duties, Liberty has engaged in bad faith insurance practices in resolving Southwest's claim for System Failure. Liberty's bad faith insurance practices include, but are not limited to, the acts described in the following paragraphs.

49. Liberty misrepresented a material policy provision related to the coverage at issue. Specifically, Liberty's coverage position attempts to read the Primary Policy and the Liberty Policy as though each required the costs and expenses incurred by Southwest to meet a reasonableness, arbitrariness, or other undefined standard. This misrepresents the Primary Policy's definition of "Loss," which covers all costs that would not have been incurred but for a Material Interruption.

50. Liberty failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Southwest's System Failure claim after its liability had become reasonably clear. Specifically, Liberty has wrongfully denied coverage despite: (a) having determined that coverage for the System Failure exists under the Primary Policy and Liberty Policy; (b) each of the four layers beneath Liberty have paid full policy benefits to Southwest; and (c) Southwest's entitlement to an objective and fair reading by Liberty of its obligations under the Liberty Policy, without regard to the excess policy or policies above it.

51. Liberty failed, within a reasonable time, to affirm or deny coverage of the System Failure claim to Southwest. Specifically, Southwest submitted its initial, written, and sworn proof

of loss in April 2017 and, after providing information to its insurers and responding to numerous inquiries and requests, held a meeting in October 2017 with its insurers, including Liberty. Yet Liberty failed to provide Southwest with its coverage position until December 2018.

52. Liberty has also delayed payment of Southwest's System Failure claim for more than sixty days, despite having received all items, statements, and forms reasonably requested and required from Southwest to pay the System Failure claim.

53. Liberty's bad faith denial of the System Failure claim entitles Southwest to all damages available under the common and statutory law including, without limitation: full policy benefits; treble damages; statutory interest in the System Failure claim at the rate of 18% per year; court costs; reasonable and necessary attorney's fees; pre-judgment and post-judgment interest; and treble damages.

## JURY DEMAND

54. Pursuant to FED. R. CIV. P. 38(b), Plaintiff Southwest Airlines Co. demands a trial by jury of all issues which are subject to jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Southwest Airlines Co. prays for relief against Defendant Liberty Insurance Underwriters Inc as follows:

A. On the first cause of action, a declaration from this Court that:

(1) the Primary Policy and the Liberty Policy cover Southwest in connection with the System Failure claim; and

(2) Southwest's loss from the System Failure Claim exceeds the limits of the Liberty Policy, such that Liberty must pay Southwest full policy benefits.

B. On the second cause of action, for damages against Liberty for breach of contract in an amount to be determined at trial, including but not limited to: full policy benefits, pre-judgment and post-judgment interest as provided by Texas law (including TEX. FIN. CODE §304.003), and Southwest's attorneys' fees and costs incurred in this matter pursuant to TEX. CIV. PRAC. & REM. CODE §38.001(8);

C. On the third cause of action, for damages against Liberty for its bad faith insurance practices in an amount to be determined at trial, including but not limited to: full policy benefits, pre-judgment and post-judgment interest as provided by Texas law (including TEX. FIN. CODE §304.003), and all available statutory damages including, without limitation, Southwest's reasonable and necessary attorneys' fees, 18% per annum statutory interest, and treble damages; and

D. That Southwest be awarded any further relief either, in law or in equity, to which it is entitled as this Court determines to be just and appropriate.

Dated: September 16, 2019                         Respectfully submitted,

*/s/ Andrew B. Ryan*
**RYAN LAW PARTNERS LLP**
Andrew B. Ryan
Texas Bar No. 24054464
3811 Turtle Creek Blvd., Suite 780
Dallas, Texas 75219
T: (214) 347-7377
F: (888) 594-6240
E: andy@ryanlawpartners.com

*Counsel for Plaintiff*
*Southwest Airlines Co.*