IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SOUTHWEST AIRLINES CO., §
     Plaintiff, §
 §
v. §    No. 3:19-CV-2218-E
 §
LIBERTY INSURANCE §
UNDERWRITERS INC., §
     Defendant. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are motions for partial summary judgment filed by both parties. On October 25, 2024, Plaintiff Southwest Airlines Company ("Southwest") filed a Motion for Partial Summary Judgment (Dkt. No. 110) with a supporting brief (Dkt. No. 111 ("P. MSJ Br.")) and appendix (Dkt. No. 112 ("P. MSJ App.")). Defendant Liberty Insurance Underwriters Inc. ("Liberty") filed its response (Dkt. No. 125), brief (Dkt. No. 126 ("D. Resp. Br.")), and appendix (Dkt. No. 127 ("D. Resp. App.")) on November 22, 2024. Southwest filed a reply on December 6, 2024. (Dkt. No. 130 ("P. Reply").)

On October 25, 2025, Liberty filed a Motion for Partial Summary Judgment as to Plaintiff's Extra-Contractual and Bad Faith Claims. (Dkt. Nos. 113, 114-2 ("D. MSJ Br.").) Southwest filed its response, brief, and appendix in opposition on November 22, 2024. (Dkt. Nos. 127, 128 ("P. Resp. Br."), 129.) Liberty filed a reply on December 6, 2024. (Dkt. No. 134 ("D. Reply").)

United States District Judge Ada Brown referred the motions to the undersigned magistrate judge for recommendation.  (Dkt. No. 139.)  For the reasons that follow, the undersigned magistrate judge recommends that Southwest's Motion for Partial Summary Judgment be granted in part and denied in part and that Liberty's Motion for Partial Summary Judgment be denied.

## I. BACKGROUND

The Fifth Circuit summarized the facts giving rise to this lawsuit in reversing a prior grant of summary judgment.  *Southwest Airlines Co. v. Liberty Ins. Underwriters, Inc.*, 90 F.4th 847, 850–51 (5th Cir. 2024).  The undersigned only lightly recounts and supplements them here.

Southwest sued Liberty after the insurer declined to pay on an insurance policy for claimed losses arising out of the airline's systemwide computer failure in July 2016.  That failure resulted in the disruption of flights over a three-day period and affected approximately 475,000 Southwest customers with flight cancelations or significant delays.  Southwest incurred several costs in connection with its attempts to recover from the system failure.  At issue in this lawsuit are certain expenses incurred by the airline to recompense its customers for flight cancelations and delays.

At the time of the system failure, Southwest maintained a cyber risk insurance policy that included "System Failure Coverage."  That provision obligated the insurer to "pay all Loss . . . that an Insured incurs . . . solely as a result of a System Failure[.]"  *Southwest*, 90 F.4th at 850.  Southwest purchased a series of excess

policies, including one from Liberty that provided excess coverage for loss beyond the policies ahead of it.  Liberty's policy provided $10 million of coverage but was triggered only if Southwest's losses surpassed $50 million.  After exhausting the first four layers of insurance coverage, Southwest looked to Liberty to pay on its policy, but Liberty declined the claim, contending among other things that Southwest's covered losses did not amount to $50 million.

Southwest has filed a motion for partial summary judgment seeking summary judgment on two issues.  First, Southwest asks the Court to define the term "but for" for the purposes of the insurance policy to mean "except for" or "if it were not for." (P. MSJ Br. at 1.)  It contends that this definition is settled as a matter of law. Second, Southwest asks the Court to determine based on an absence of a factual dispute that Liberty violated the Texas Prompt Payment of Claims Act ("TPPCA"), Tex. Ins. Code Ch. 542, subchapter B, by failing to timely request information from Southwest information it needed to process the claim.  (P. MSJ Br. at 1.)

In its motion, Liberty seeks summary judgment on Southwest's extra-contractual claims.  It contends that Southwest's bad faith claim fails as a matter of law because the evidence demonstrates that there is a bona fide dispute between the parties concerning coverage.  (D. MSJ Br. at 7-17.)  It also argues that summary judgment is appropriate on Southwest's statutory claims because Southwest fails to show that it suffered any injury beyond its loss of policy benefits and because

Southwest failed to provide all the information that had been requested from it. (D. MSJ Br. at 17-22.)

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Evidence is sufficient to establish a "genuine" issue if it would allow a reasonable trier of fact to find in favor of the non-moving party. *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 484 (5th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 484 (quoting *Celotex Corp.*, 477 U.S. at 323). "The burden then shifts to 'the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex Corp.*, 477 U.S. at 324). "The court must 'draw all reasonable inferences in favor of the nonmoving party' and 'refrain from making credibility determinations or weighing the evidence.'" *Id.* (quoting *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). "A party cannot 'defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'"

*Id.* (quoting *Turner*, 476 F.3d at 343 (internal quotation marks omitted)).

"[S]ummary judgment is appropriate where the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991); *see also ACE Am. Ins. Co. v. Murco Wall Prods., Inc.*, No. 4:22-CV-01137-P, 2024 WL 3173617, at *2 (N.D. Tex. June 24, 2024) ("Interpretation of an insurance policy is a question of law that is 'particularly appropriate for summary disposition.'" (quoting *Fina, Inc. v. Travelers Indem. Co.*, 184 F. Supp. 2d 547, 550 (N.D. Tex. 2002))).

For a party to obtain summary judgment on a claim—or any component part of a claim—that the party will shoulder the burden of proof at trial, that party "must establish beyond peradventure all of the essential elements of the claim or defense." *Vazzano v. Receivable Mgmt. Servs., LLC*, 621 F. Supp. 3d 700, 705 (N.D. Tex. 2022) (quoting *Bank One, Texas, N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995)). That requires the party to demonstrate that there are no genuine material fact disputes and that the party is entitled to judgment as a matter of law. *Id.* The beyond peradventure standard has been described as "heavy." *Id.*

### III. ANALYSIS

**A.    Southwest's motion for partial summary judgment should be granted in part and denied in part.**

Southwest moves for partial summary judgment on two issues. In connection with its contractual claims, it argues that the Court should interpret the insurance policy term "but for" to mean "except for" or "if it were not for." (P. MSJ Br. at 8-13.) And with respect to its Texas statutory claim relating to insurance practices,

Southwest seeks a determination on summary judgment that Liberty did not request documents from Southwest within 15 days of being notified of Southwest's claim. (P. Br. at 13-15.)[1]

### 1.    The District Judge should conclude that the term "but for" as used in the insurance policy means "except for."

Southwest's first ground for summary judgment concerns interpretation of a term used in the definition of "loss," which the Fifth Circuit construed.  *See Southwest*, 90 F.4th at 851–54.  The policy defines loss, in relevant part, to include both "costs that would not have been incurred but for a **Material Interruption**," (P. MSJ App. at 77) and "costs to reroute or reschedule passenger travel that would not have been incurred but for a **Material Interruption**," (P. MSJ App. 73).  In its decision, the Fifth Circuit held that the disputed expenses claimed as loss by Southwest—namely, cover refunds, travel vouchers, loyalty points, fare discount codes, and advertising costs associated with an extended fare sale—"satisfy [the policy's] lenient but-for causation standard and are therefore 'losses.'"  *Southwest*, 90 F.4th at 852.

Southwest asks the Court to construe the term "but for" within the definition of loss to mean "except for" or "if it were not for."  (P. MSJ Br. at 8-9.)  It contends

---

[1] Liberty objects to Southwest's summary judgment evidence except for the policies at issue.  (D. Resp. at 4.)  The undersigned determines that resolution of the evidentiary objections is unnecessary to the recommendations made for resolution of Southwest's Motion for Partial Summary Judgment.  *See Connell v. TCI Solutions, Inc.*, No. 3:04-CV-1689-P, 2005 WL 8148194, at *5 (N.D. Tex. Oct. 5, 2005) (finding resolution of evidentiary objections unnecessary where objected-to evidence was irrelevant to court's decision).

that this construction of the term is supported by the common and ordinary meaning of the term and by Texas law.  (P. MSJ Br. at 8-11.)  Indeed, the ordinary understanding of the term, *see Dillon Gage Inc. of Dallas v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021), is "except for, with the exception of; were it not for," Oxford English Dictionary, http://www.oed.com (last visited June 25, 2025).  With respect to but-for causation, the Fifth Circuit observed in this case that it is a lenient standard.  *Southwest*, 90 F.4th at 852.  The Texas Supreme Court has held that "[a] 'but for' cause is one 'without which the event could not have occurred.'"  *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 438 (Tex. 2017).[2]

Liberty does not offer a competing definition of "but for" in its response.  Rather, its opposition to summary judgment is premised on several reasons it believes Southwest's claimed expenses are not covered by the policy regardless of the airline's proffered interpretation of "but for."  (D. Resp. Br. at 7-10.)  Particularly, Liberty contends that even if the definition of loss incorporates Southwest's understanding of "but for," the final issue of coverage would remain in dispute because Southwest would still have to establish that the expenses were within other coverage provisions—specifically, that they were incurred "solely" as a result of the system failure, had a sufficient causal nexus to the system failure, fell within the

---

[2] Because the case is before the Court based on diversity jurisdiction (*see* Dkt. No. 28 ¶ 3), it applies Texas law in interpreting the policy.  *ACE Am. Ins. Co.*, 2024 WL 3173617, at *2.

policy's "Net Profit Calculations," and did not fall within any of the policy exclusions; and that reimbursement of those expenses did not put Southwest in a better position than they would have been had the system failure not occurred. (D. Resp. Br. at 9-10.[3]) Because construing "but for" in the policy will not determine whether coverage for the expenses at issue, Liberty does not believe it is appropriate for summary judgment. (D. Resp. Br. at 10.)

The undersigned disagrees. Contrary to Liberty's assertion otherwise,[4] Southwest is not asking the Court to conclude at this stage that the disputed expenses are covered by the insurance policy. (*See* Reply at 1.) Rather, its motion is aimed precisely at the construction of one term used in the policy, which is a purely legal matter that can be decided on summary judgment. *See Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 309 (5th Cir. 2010) ("Interpretation of an insurance policy is a question of law."). Based on the applicable law—and in the absence of any evidence or argument suggesting the parties adopted a competing interpretation—the undersigned concludes that the term "but for" as used in the relevant policy means "except for." In reaching this conclusion, the undersigned does not conclude or opine with respect to whether the insurance policy provides coverage for the disputed expenses, or any part of them.

---

[3] Liberty posits an additional reason that is unclear and undeveloped: "Fifth, within the Policy coverage period, and limits." (D. Resp. Br. at 10.) The undersigned does not address this ground because it is inadequately briefed.

[4] (*See* D. Resp. Br. at 8 (arguing that Southwest "incorrectly impl[ies] that [construing the term 'but for'] completes the coverage analysis").)

## 2.    Southwest is not entitled to summary judgment on elements of it claim under Tex. Ins. Code § 542.055(a).

The second part of Southwest's motion for partial summary judgment concerns its claim against Liberty for violating statutory obligations to its insured with respect to the timely investigation of claims.  (*See* Dkt. No. 28 ¶¶ 233-40.)

The Texas Prompt Payment of Claims Act ("TPPCA")—which is found at Chapter 542, subchapter B, of the Texas Insurance Code—"provides that an insurer, who is 'liable for a claim under an insurance policy' and who does not promptly respond to, or pay, the claim as the statute requires, is liable to the policy holder or beneficiary not only for the amount of the claim, but also for 'interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees.'"  *Patton v. Meridian Sec. Ins. Co.*, 617 F. Supp. 3d 516, 539 (N.D. Tex. 2022) (quoting Tex. Ins. Code § 542.060(a)).  "The Texas Legislature advises courts that these provisions should be 'liberally construed to promote the prompt payment of insurance claims.'"  *Id.* (quoting Tex. Ins. Code § 542.054.)

"To recover a statutory penalty under [the TPPCA], an insured must establish: (1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to comply with one of the requirements of [the statute] with respect to the claim."  *Patton*, 617 F. Supp. 3d at 540 (quoting *Evergreen Nat. Indem. Co. v. Tan It All, Inc.*, 111 S.W.3d 669, 678 (Tex. App. 2003)).  Southwest seeks summary judgment only on the first and third elements of its claim.  (P. MSJ Br. at 14.)  It argues that the there is no material dispute of fact that it submitted a

claim on the Liberty policy on April 13, 2017, and that Liberty failed to request information from Southwest until 110 days later, in violation of Tex. Ins. Code § 542.055(a)(3).[5] (*See* P. MSJ App. 101-03, 326-29.)

Liberty opposes summary judgment on several grounds. First, it objects to Southwest's summary judgment evidence establishing the date of the claim, among other things. (D. Resp. Br. at 5-7.) Second, it asserts that Southwest's April 13, 2017 notice of loss was sent to the primary insurer—not Liberty—and that Liberty therefore was not obligated to adhere to the deadlines in § 554.055(a) based on that date. (D. Resp. Br. at 11.) Third, it contends that it acknowledged Southwest's claim in writing and began its investigation into the claim months before Southwest submitted its notice of loss. (D. Resp. Br. at 11.) Fourth, Liberty suggests that it fulfilled its obligations under § 542.055(a)(3) when it requested documents and information from Southwest prior to its notice of loss. (D. Resp. Br. at 12.)

The undersigned concludes that summary judgment is not warranted here. Liberty has not ably disputed the facts as Southwest portrays them but makes factual averments in its brief concerning meetings and investigative steps that occurred prior

---

[5] Tex. Ins. Code § 542.055(a)(3) states that, "[n]ot later than the 15th day, or if the insurer is an eligible surplus lines insurer, the 30th business day after the date an insurer receives notice of a claim, the insurer shall . . . request from the claimant all items, statements, and forms that the insurer reasonably believes, at the time, will be required from the claimant."

to the April 13, 2017, notice of loss.  (*See* D. Br. at 11-12.)  But its evidentiary citations are untrustworthy in supporting the averments made.[6]

Nonetheless, Southwest has not carried is heavy burden to establish beyond peradventure that it is entitled to judgment as a matter of law on the elements on which it moves.  Among other things, the Texas statute is unclear with respect to the duties of an excess insurer vis-à-vis the timing set out in § 542.055(a).  Liberty cites authority for the proposition that Southwest's April 13, 2017, notice of loss triggered the statutes deadlines only with respect to the primary insurer.  (D. Resp. Br. at 36 (citing *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692, 701 (Tex. 2000)).)  The undersigned appreciates Southwest's distinction of *Keck* and its arguable irrelevance to § 542.055, a subject the decision did not address.  Even so, Southwest's brief does little more on this particular issue than distinguish *Keck*, and it does not establish that, as a matter of law, Liberty's duties under § 542.055 were triggered by the April 13, 2017 communication alone.  Given the lack of clarity on this issue and the parties' lack of precise engagement with the issue in their briefing,

---

[6] As only one of multiple available examples, Liberty avers that it participated in an in-person meeting with Southwest on August 15, 2016.  (D. Resp. Br. at 11.)  To support that factual assertion, it cites "Pl. App. 327, Ex. C to Southwest's Motion. [Doc. No. 111, 11]."  (D. Resp. Br. at 11 n.39.)  That page of Southwest's appendix, which is actually Dkt. No. 112, does not refer to, much less provide, admissible summary judgment evidence of, a meeting attended by Southwest and Liberty on August 15, 2016.  Rather, the cited page is the second page of correspondence from Liberty's outside counsel to a claims consultant dated August 1, 2017.  (P. MSJ App. 237.)  This is just one example of the Liberty's failure to support its factual averments with evidence, which is its burden to withstand summary judgment.  *See* Fed. R. Civ. P. 56(c)(1)(A).

the undersigned concludes that summary judgment should be denied on this issue for which Southwest bears the burden of proof at trial. *See Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-CV-0823-D, 2022 WL 562760, at *16 (N.D. Tex. Feb. 23, 2022) (denying summary judgment based on uncertainty of the law).

**B.    Liberty's motion for partial summary judgment should be denied.**

Southwest asserts a claim against Liberty for bad faith insurance practices in violation of Texas Insurance Code Chapters 541 and 542.  (*See* Dkt. No. 28 ("Am. Compl.") ¶¶ 234-39.)  Through its claims of bad faith, Southwest seeks policy benefits, treble damages, and statutory interest, among other things.  (*Id.* ¶ 240.)  Liberty moves for summary judgment on Southwest's extra-contractual and bad faith claims on three bases.  First, Liberty contends that the record demonstrates that it is entitled to summary judgment on Southwest's claim of bad faith because there is a bona fide dispute between the parties concerning whether the policy provides coverage.  (D. MSJ Br. at 7-17.)  Second, Liberty argues that Southwest's claim under Chapter 541 should be dismissed because it has not shown that it suffered any injury from the alleged statutory violation that is independent of the loss of policy benefits.  (D. MSJ Br. at 17-19.)  Third, Liberty asserts that Southwest's TPPCA claim fails as a matter of law because Southwest did not provide all the information Liberty requested of it necessary to its resolution of the claim.  (D. MSJ Br. at 19-22.)

**1.    This Court is precluded from reconsidering the Fifth Circuit's decision that summary judgment on Southwest's bad faith claim is not appropriate.**

To establish a bad faith claim, Southwest must prove that Liberty "knew or should have known it was reasonably clear that the claim was covered." *Hellstern v. Hartford Fire Ins. Co.*, No. 3:14-CV-0993-P, 2015 WL 11120978, at *3 (N.D. Tex. June 23, 2015) (internal quotation marks omitted)).  The erroneous denial of a claim does not, however, equate to bad faith.  "A bona fide dispute about the insurer's liability on the insurance contract does not rise to the level of bad faith." *Luna v. Nationwide Prop. & Cas. Ins. Co.*, 798 F. Supp. 2d 821, 830 n.14 (S.D. Tex. 2011). Liberty argues that there can be no bad faith as a matter of law because the evidence establishes the existence of a bona fide dispute between the parties as to whether the policy covered Southwest's claimed losses.  (D. MSJ Br. at 7-17.)

Liberty cannot obtain summary judgment on this basis.  Liberty's briefing and the evidence it cites for support are largely copied verbatim from Liberty's prior motion for summary judgment filed in November 2021.  (*Compare* D. MSJ. Br. at 9-17, *with* Dkt. No. 50-1 at ECF pp. 48-53.)  On appeal, the Fifth Circuit considered whether Liberty was entitled to summary judgment on this precise basis. *Southwest*, 90 F.4th at 856 (considering the grant of summary judgment on bad faith claim on the basis "that there was a bona fide dispute between the parties as to coverage").  After considering the arguments and evidence, the court of appeals "conclude[d] that

Southwest satisfied its burden of showing that a genuine dispute of material fact exists as to whether Liberty had a reasonable basis to deny Southwest's claims." *Id.*

"[T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *ODonnell v. Goodhart*, 900 F.3d 220, 224 (5th Cir. 2018) (quoting *Gene & Gene, L.L.C. v. BioPay, L.L.C.*, 624 F.3d 698, 702 (5th Cir. 2010)). "The district court 'must implement both the letter and the spirit of the appellate court's mandate.'" *Id.* (quoting *United States v. McCrimmon*, 443 F.3d 454, 460 (5th Cir. 2006) (quotation marks omitted)).  Liberty does not address the mandate rule or explain how this Court may grant summary judgment based on the same arguments and evidentiary record that prompted the Fifth Circuit to determine that fact issues preclude summary judgment.  Curiously, Liberty acknowledges the Fifth Circuit's decision but, without authority, argues that the appellate court's reasoning buttresses its argument that coverage was not reasonably clear.  (D. Reply at 5.)  The undersigned disagrees.  The Fifth Circuit spoke clearly on this issue when it concluded that fact issues exist precluding summary judgment, *see Southwest*, 90 F.4th at 856, and this Court "is required to abstain[] from reexamining an issue of fact or law that has already been decided on appeal," *Franklin v. Regions Bank*, 125 F.4th 613, 629 (5th Cir. 2025) (internal quotation marks omitted).

-14-

**2.    Liberty is not entitled to summary judgment on Southwest's claim for damages under Chapter 541.**

Liberty contends that it is also entitled to summary judgment on Southwest's claim for damages arising out of Chapter 541 of the Texas Insurance Code. Texas law provides that proof of a statutory violation may result in an award of actual damages, court costs, and attorney's fees and, if proved to have been committed knowingly, treble damages. *See* Tex. Ins. Code § 541.152. Liberty argues that, regardless whether Southwest ultimately shows that it is entitled to contractual damages, it cannot obtain additional statutory damages because Southwest has produced no evidence of an injury other than its loss of policy benefits. (D. MSJ Br. at 17-19.) In Liberty's view, Southwest cannot maintain a claim for statutory damages under Chapter 541 when its only claimed injury is the loss of the policy benefits. Southwest does not point to any evidence of independent injury but argues that it need not do so. It contends that damages are recoverable under Chapter 541 based solely on its claim for actual damages amounting to policy benefits.[7] (P. Resp. Br. at 16.)

---

[7] Southwest also argues that the Fifth Circuit's decision precludes consideration of this issue. (P. Resp. Br. at 16.) In granting summary judgment on Southwest's bad faith claims, the district court held that Southwest failed to show injury apart from its contractual damages. (Dkt. No. 91 at 2 & n.4.) The Fifth Circuit's opinion does not mention this basis for summary judgment, but Southwest contends that its ruling that Liberty was not entitled to summary judgment implicitly decided the issue such that the Court cannot reconsider Liberty's independent-injury argument. (*See* P. Resp. Br. at 16.) The undersigned does not agree. The mandate rule precludes a district court from relitigating matters decided on appeal, but it applies to issues decided "expressly or necessarily by implication." *Quest Med., Inc. v. Apprill*, 90 F.3d 1080, 1094 (5th Cir. 1996). It does not appear from the Fifth Circuit's opinion that it decided this issue by necessary implication.

The parties find support for their respective argument in *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018), in which the Supreme Court of Texas sought to "provide clarity regarding the relationship between claims for an insurance-policy breach and Insurance Code violations." *Id.* at 488. There, it explained that claims for breach of an insurance agreement are "'distinct' and 'independent' from claims that the insurer violated its extra-contractual common-law and statutory duties." *Id.* at 489. Although the claims may be "largely interwoven," *id.* (quoting *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996)), the former is a breach-of-contract claim while the latter statutory and common-law claims "'sound[] in tort,'" *id.* (quoting *Twin City Fire Ins. Co. v. Davis*, 904 S.W.2d 663, 666 (Tex. 1995)). The primary question in *Menchaca* was "whether an insured can recover policy benefits as 'actual damages' caused by an insurer's statutory violation absent a finding that the insured had a contractual right to the benefits under the insurance policy." *Id.* Although the court answered the question with a "[g]eneral[]" no, it observed that the issue was a complicated one that implicated several related questions. *Id.* In an attempt to provide clarity, the court explained "five distinct but interrelated rules that govern the relationship between contractual and extra-contractual claims in the insurance context." *Id.*

Liberty relies on the fourth rule explained in *Menchaca*: "if an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the

insured a right to benefits." *Id.* This rule, referred to as the "independent-injury rule," grows from precedent observing that an insured cannot sue the insurer for bad faith based on the denial of a claim for which there was in fact no coverage unless the insurer's tort causes some injury that is independent of the policy claim. *Id.* at 499 (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). The court further explained that this rule has two facets. First, "if an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id.* Second, "an insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits." *Id.* at 500. Liberty embraces this second aspect of the independent-injury rule. It argues that, under *Menchaca*, it cannot be liable for statutory damages (i.e., "*any* damages") beyond policy benefits unless Southwest establishes that it suffered an injury that is independent of its loss of policy benefits. Considering only this aspect of *Menchaca*, it might appear that Southwest cannot maintain a claim for statutory damages beyond policy benefits without showing some independent injury.

Southwest, however, contends that the independent-injury rule has no role here because its claim for statutory damages is rooted elsewhere in *Menchaca*. The second rule distilled by the court in *Menchaca* is that "an insured who establishes a right to receive benefits under an insurance policy can recover those benefits as

-17-

'actual damages' under the statute if the insurer's statutory violation causes the loss of the benefits." *Menchaca*, 545 S.W.3d at 495. This rule emanates from precedent recognizing that "an insurer's unfair refusal to pay the insured's claim causes damages as a matter of law in at least the amount of the policy benefits wrongfully withheld." *Id.* (quoting *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988)). Under this "entitled-to-benefits" rule, an insured may elect to recover the amount of benefits as actual damages under the statute rather than through a breach-of-contract claim. *Id.* Stated succinctly, "an insured who establishes a right to benefits under the policy can recover those benefits as actual damages resulting from a statutory violation." *Id.* at 497. Because Southwest seeks to establish a right to benefits under the insurance policy, it contends the entitled-to-benefits rule enables it to recover the amount of policy benefits as actual damages without regard for any independent injury resulting from a statutory violation. And, in its view, having a right to actual damages under the entitled-to-benefits rule, it is not constrained in seeking additional statutory damages by the independent-injury rule.

It is difficult to discern from *Menchaca* alone which of its clarifying categories—the entitled-to-benefits rule or independent-injury rule—Southwest's claim for statutory damages falls into. The parties' briefs do not engage the other's position; they rely on their own selection from *Menchaca* without explaining why the other party's reliance on a competing portion of the opinion is misplaced.

Fifth Circuit precedent provides guidance here, and it favors Southwest on this issue. *See Lyda Swinerton Builders, Inc. v. Oklahoma Sur. Co.*, 903 F.3d 435, 450–53 (5th Cir. 2018). In *Lyda Swinerton Builders*, a building contractor brought claims for statutory damages under Chapter 541 against a subcontractor's insurer that failed to provide a defense to the contractor. *See id.* at 443. After a bench trial, the district court held that the insured contractor failed on its claim for extra-contractual damages because it did not prove that it suffered an injury separate and apart from the denial of policy benefits. *Id.* at 444. The Fifth Circuit examined *Menchaca* and the decisions it relied on, and it particularly considered the interplay between the entitled-to-benefits rule and the independent-injury rule in that circumstance. *Id.* at 450–52. Upon doing so, the court concluded that "the independent-injury rule does not restrict the damages an insured can recover under the entitled-to-benefits rule." *Id.* at 452. "Rather, the independent-injury rule limits the recovery of *other* damages that 'flow' or 'stem' from a mere denial of policy benefits." *Id.* The Fifth Circuit illustrated the point by noting that damages for emotional distress could not be recovered under the entitled-to-benefits rule (because it would not be a measure of damages under policy benefits), nor could they be recovered under the second facet of the independent-injury rule without establishing that they flow from some separate and independent injury beyond the mere denial of policy benefits. *Id.* at 452 & n.4. Because the contractor advanced a claim under the entitled-to-benefits rule, the Fifth Circuit concluded that the insured could obtain the amount of policy benefits as

-19-

statutory damages and treble damages (if proved) without running afoul of the independent-injury rule. *Id.* at 543.

Despite Southwest's express reliance on *Lyda Swinerton Builders*, Liberty does not engage the decision in its reply. That precedent persuades the undersigned that Southwest's statutory claim falls within *Menchaca*'s entitled-to-benefits rule and is not subject to dismissal for lack of an independent injury.

### 3. Liberty is not entitled to summary judgment on Southwest's claim under Chapter 542.

Liberty next asserts that it is entitled to summary judgment on Southwest's TPPCA claim under Chapter 542 of the Texas Insurance Code. (D. MSJ Br. at 19-20.) Under that chapter, Liberty was required to notify Southwest of its acceptance or rejection of the claim "not later than the 15th business day after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." Tex. Ins. Code § 542.056(a). Liberty argues that it is entitled to summary judgment because the evidence is undisputed in showing that Southwest never provided Liberty with all the documents Liberty had requested to process the claim, such as Southwest's correspondence with other insurers and hourly calculations of lost bookings. (D. MSJ Br. at 20.) As Liberty views it, Southwest's failure to provide the requested information means that Liberty's duties under § 542.056(a) never arose. (*Id.*) Southwest argues that Liberty rejected the claim for reasons other than the failure to provide requested information, so it cannot now rely on that reasoning as a basis for summary judgment. (P. Resp. Br. at 17.)

-20-

Even accepting that Southwest did not provide all the records that Liberty requested—which Southwest does not dispute—it does not automatically follow that Liberty is entitled to summary judgment. This is so because Liberty cannot rely on Southwest's failure to provide information as an after-the-fact escape from liability. *See Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 524 (5th Cir. 2015) ("The insurer cannot avoid liability under § 542.056 by pointing after-the-fact to missing information, the absence of which did not affect the insurer's decision."). Liberty argues that *Weiser-Brown* does not apply here because this is not a case in which the failure to provide requested information is a post hoc reason that did not actually animate its coverage decision. (D. Reply at 11-12.) Liberty noted in its no-coverage letter that "Southwest [was] either unable or unwilling to provide any further information or documentation in response to Liberty's outstanding requests" and that Liberty made its final coverage determination "based upon the representation that no further information or documentation will be forthcoming from Southwest." (Dkt. No. 115-2 at 472.) Additionally, Liberty asserts that the policy specifically provided that "net profit (or net loss) and charges and expenses shall be calculated on an hourly basis and based on such an Insured's actual net profit (or loss) and charges and expenses." (D. Reply at 10.[8])

_____

[8] Liberty states that this language comes from a policy endorsement found at page 85 of its appendix, which it identifies as Endorsement No. 21 at ¶ 11. (D. Reply at 10 n.20.) The cited page, however, is a Liberty policy declaration identifying the insured, limits of liability, and underlying policies. The undersigned did not find Endorsement No. 21 in the appendix but, after considerable effort, located it at in Southwest's appendix, P. MSJ App.

-21-

Liberty has shown that *Weiser-Brown* is distinguishable because Liberty specifically noted its inability to obtain additional information from Southwest when it rendered its no-coverage decision—i.e., the failure to provide documents is not merely a post hoc explanation for the denial. It is doubtful, however, that this distinction warrants summary judgment. The Fifth Circuit rejected the insurer's argument about unprovided information in *Weiser-Brown* not simply because it was a reason given after the fact, but also because it "did not affect the insurer's decision." *Weiser-Brown*, 801 F.3d at 524. Here, Liberty's no-coverage letter acknowledged the absence of requested information, but even without that information it was able to determine that there was no coverage for the claimed loss. Arguably, Liberty might demonstrate at trial that the missing information affected its no-coverage decision and, thus, prove that its duty under § 542.056(a) did not arise. But the record does not demonstrate such to be the case, and therefore, Liberty is not entitled to summary judgment on that claim.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff Southwest Airlines Co.'s Motion for Partial Summary Judgment (Dkt. No. 110) be **GRANTED** in part and **DENIED** in part and that Liberty Insurance Underwriter's Motion for Partial Summary Judgment (Dkt. Nos. 113, 114-2) be **DENIED**.

---

79. This is just another example of briefing errors that have slowed the undersigned's consideration of the pending motions.

**SO RECOMMENDED** on December 2, 2025.


_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE


**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).