IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., <br> Plaintiff, | § <br> § <br> § | |
| v. | § | No. 3:19-CV-2218-E |
| | § | |
| LIBERTY INSURANCE <br> UNDERWRITERS INC., <br> Defendant. | § <br> § <br> § <br> § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are the parties' motions to exclude expert witness testimony. On October 25, 2025, Plaintiff Southwest Airlines Co. ("Southwest") filed a Motion to Partially Exclude Opinions of Steven Plitt (Dkt. No. 109 ("P. Plitt Br.")) and a Motion to Partially Exclude Opinions of Shannon Rusnak (Dkt. No. 108 ("P. Rusnak Br.")). Defendant Liberty Insurance Underwriters, Inc. ("Liberty") filed responses (Dkt. Nos. 120, 122) and briefs (Dkt. Nos. 121 ("D. Plitt Resp."), 123 ("D. Rusnak Resp.")) on November 22, 2024. Southwest filed replies in support of its motions on December 6, 2024. (Dkt. Nos. 131 ("P. Rusnak Reply"), 132 ("P. Plitt Reply").)

Also on October 25, 2025, Liberty filed an Opposed Motion to Strike Plaintiff's Testifying Experts. (Dkt. No. 113-2 ("D. Br.").) Southwest filed its response on November 22, 2024. (Dkt. No. 118 ("P. Resp.").) Liberty replied on December 6, 2024. (Dkt. No. 133 ("D. Reply").)

-1-

On February 3, 2025, United States District Judge Ada Brown referred the motions to the undersigned for determination pursuant to 28 U.S.C. § 636(b). (Dkt. No. 139.) For reasons explained below, the Court denies each of the motions.

## I. BACKGROUND

The factual background underlying this lawsuit is set out in the Fifth Circuit's opinion reversing the grant of summary judgment and need not be repeated in full here. *See Southwest Airlines Co. v. Liberty Ins. Underwriters, Inc.*, 90 F.4th 847, 850–51 (5th Cir. 2024). This lawsuit arises out of a computer system failure that disrupted Southwest's flight schedule for three days in July 2016 and caused flight cancelations or delays for approximately 475,000 Southwest customers. The airline attempted to ameliorate the negative effects on customers in several different ways and at considerable cost. It issued travel vouchers, discount codes, and loyalty points for use on future travel; paid cover refunds for alternative travel arrangements; and increased its advertising for an ongoing fare sale that it extended due to the disruption.

Southwest claimed these expenses as losses caused by the system malfunction and looked to Liberty—an excess insurer in its tower of coverage—to pay on a policy that provided coverage for a system failure. Liberty denied coverage on the basis that Southwest's covered losses were less than the amount required to trigger its excess policy. Specifically, Liberty disputed that certain Southwest expenditures were losses covered by the policy or contended that the expenditures fell within one

of the policy's exceptions to coverage. Southwest filed this lawsuit seeking contractual and extra-contractual damages relating to Liberty's denial of coverage.

Liberty designated Steven Plitt, an attorney with decades of experience in insurance, as an expert witness and disclosed a 115-page report setting out his observations and opinions. (*See* Dkt. No. 109-1 ("P. Plitt App.").) Liberty expects that he will testify on insurance industry customs and standards under Texas law as they would have been applied by the insurer in this instance. (Dkt. No. 121 ("D. Platt Br.") at 1-2.) Liberty also designated Shannon Rusnak, a certified public accountant, to testify concerning Southwest's claimed economic damages. Relevant here, Rusnak's damages model does not include certain aspects of claimed loss that Southwest's damages expert included.

Southwest moves to exclude certain opinions expressed by Platt and Rusnak. Specifically, Southwest contends that some of Platt's opinions should be excluded because they are purely improper legal conclusions, misstate the law, or were not properly disclosed under Fed. R. Civ. P. 26(a). With respect to Rusnak, it contends that she should not be permitted to testify that the policy allowed Southwest to incur only one kind of compensation cost per customer or that its costs had to be necessary.

Southwest, too, has identified individuals from whom it might elicit expert testimony. It retained forensic accountants Daniel Bradley and Kevin Grudzien to assist the company in its assessment of the impact of the system outage and to

prepare the company's loss figure for its insurance claim. (*See* Dkt. No. 119 ("P. Resp. App.") at 5-6.) It has identified them as non-retained experts in this litigation. (P. Resp. App. 5.) Southwest identified Gregory Thaler, a forensic accountant, as a retained expert who will testify regarding the company's loss, and it provided his 52-page report. (P. Resp. App. 4; D. App. 97, 153.) Finally, Southwest has identified Michael Quinn, a lawyer, as a rebuttal expert who disagrees with Plitt and may testify concerning the relationship between insurers and insureds. (P. Resp. App. 21-25.) Southwest also produced a report from Quinn. (D. App. 572-634.) Liberty seeks to exclude testimony from each of these experts, either in whole or in part.

## II.  LEGAL STANDARDS

The admissibility of expert testimony is governed by Fed. R. Evid. 702. That rule provides that, where specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Fed. R. Evid. 702. Rule 704 states that expert opinion testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to the decided by the trier of fact." Fed. R. Evid. 704. "However, neither Rule 702 nor Rule 704 permits an expert witness to offer legal conclusions." *Lincoln Gen. Ins. Co. v. Valley Transp. Brokerage, Inc.*, No. H-01-1452, 2002 WL 34370100, at *4 (S.D. Tex. July 22, 2002) (citing *Alldread v. City of Grenada*, 988 F.2d 1425, 1436 (5th Cir. 1993), and *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240

(5th Cir. 1983)). "Similarly, an expert may not provide testimony that merely instructs the jury what result to reach." *Id.*

The proponent of the expert testimony has the burden to establish admissibility by a preponderance of the evidence. *Am. Can! v. Arch Ins. Co.*, 597 F. Supp. 3d 1038, 1044 (N.D. Tex. 2022). "The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and the testimony is relevant and reliable." *Id.* (citing *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998)). "The standard for relevance is a liberal one." *Hall Arts Ctr. Off., LLC v. Hanover Ins. Co.*, 327 F. Supp. 3d 979, 1005 (N.D. Tex. 2018) (quoting *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089, 1093 (5th Cir. 1994)). "The court's inquiry is flexible in that '[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it.'" *America Can!*, 597 F. Supp. 3d at 1044 (quoting *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010)).

### III.  ANALYSIS

A.   Southwest's motions to partially exclude Liberty's expert testimony

   1.   Steven Plitt

In his report, Plitt identifies the several materials he reviewed to prepare his expert report, including Liberty's claim file, discovery and documents produced in litigation, summary judgment briefing, and deposition transcripts. (P. Plitt App. 18-19.) In this report, Plitt disclaims any intent to render legal opinions, and he notes

that his opinions concern compliance with industry standards such that, even without expressly saying so with each opinion, "it is [his] intention to imbibe within [his] opinions the understanding that [his] opinions are based upon compliance with industry standards, customs, and practices[.]" (P. Plitt App. 106.) Plitt opined, among other things, that Liberty reasonably processed Southwest's claim and came to the reasonable conclusion that its policy did not provide coverage for costs at issue in this lawsuit. (P. Plitt App. at 106, 112.) Southwest identifies some of Plitt's opinions as excludable because they are either legal conclusions, contrary to law, or not properly disclosed under Fed. R. Civ. P. 26(a).

Southwest first contends that 14 of Plitt's opinions constitute legal conclusions that invade the province of the Court to instruct the jury on the law. (P. Plitt Br. at 3-10.) Specifically, it asserts that Plitt's opinions that Liberty's processing of Southwest's claim was consistent with the policy's implied covenant of good faith and fair dealing and Texas's Unfair Claims Settlement Practices Act and his opinion that Liberty had a reasonable basis for its no-coverage determination are purely legal opinions. The Court disagrees.

It is well established that an expert witness "may never render conclusions of law," because doing so usurps the role of the trial judge in instructing the jury on the law. *America Can!*, 597 F. Supp. 3d at 1046 (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009)). But Fed. R. Evid. 704 recognizes that an expert opinion is not excludable because it "embraces an ultimate issue." And "a legal

expert may testify as to mixed questions of law and fact." *Wooten v. Collin Cnty., Texas*, No. 4:18-CV-380, 2021 WL 5834437, at *3 (E.D. Tex. Dec. 9, 2021). Courts have observed that the line between impermissible questions calling for purely legal opinions and permissible ones is not an easy one to draw. *See America Can!*, 597 F. Supp. 3d at 1046. "Ultimately, the expert must 'bring more to the jury than the lawyers can offer in argument.'" *Id.* (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992)).

After reviewing the 14 Plitt opinions that Southwest contends constitute legal conclusions, the Court concludes that Southwest's motion should be denied on this point. "Courts routinely allow testimony from experts within the insurance industry to testify about the ordinary practices and usages of the industry, while specifically barring testimony that states a legal conclusion. *Id.* at 1047. Plitt's opinions generally are not pure legal conclusions that instruct the jury on the law, but instead are mixed questions of fact and law and incorporate his experience and understanding of insurance practices and standards. His report does "bring more than the lawyers can offer in argument" and may be helpful to the fact finder. *See id.* at 1046.

Additionally, with respect to several of Southwest's assertions that Plitt is merely rendering flawed legal opinions, its motion is premised on recasting Plitt's opinions about the reasonableness of Liberty's positions or actions as conclusions on the law. For example, Southwest attacks Plitt as opining about what the insurance

policy does and does not cover.  (P. Plitt Br. at 5-6.)  As one example, Southwest asserts that "Mr. Plitt claims that 'voluntarily incurred' customer compensation costs are 'not "solely" because of the System Failure,' and are therefore not covered 'by the Primary Policy.'"  (*Id.* at 5 (citing P. Plitt App. 113-15).)  But at the cited portion of his report, Plitt recounts Liberty's assessment of the policy and relevant information obtained in discovery and opines that "[t]here was a reasonable basis for Liberty to conclude these expenses were not 'solely' caused by the subject System Failure as required to trigger the insuring agreement."  (P. Plitt App. 115.)  In this respect, Plitt's opinions are not purely legal opinions as to the meaning of the insurance policy, but are instead opinions about the reasonableness of Liberty's actions based on his review of the law and facts.  Southwest's motion is denied subject to its ability to contest true legal conclusions offered under the guise of expert testimony at trial.

Southwest next argues that some of Plitt's proposed testimony should be excluded because it contradicts conclusions drawn by the Fifth Circuit on appeal or other law.  (P. Plitt Br. at 11-14.)  Having reviewed these portions of Plitt's report, the Court concludes that his testimony is not subject to exclusion on this basis at this point.  The Court will instruct the jury as to the law and it will do so consistent with the Fifth Circuit's decision, and Plitt will not be permitted to testify as to what the law is.  He may, however, testify with respect to the reasonableness of Liberty's assessment of Southwest's claimed loss.

Finally, Southwest challenges five identified opinions in Plitt's report as inadequately disclosed because, in its view, they lack the necessary explanation for them. (P. Plitt Br. at 16-17.) Reviewing Plitt's report, however, the Court concludes that these opinions are predicated on the same analysis underlying the prior opinions disclosed in the report. These additional opinions are not excludable because the report did not repeat the analysis.

### 2. Shannon Rusnak

Liberty retained Rusnak as "an expert forensic accountant" to "offer opinion testimony within the areas of her expertise controverting opinions expressed by Plaintiff's experts relating to the amount and calculation of damages[.]" (Dkt. No. 108-1 ("P. Rusnak App.") at 2.) Southwest moves to exclude Rusnak's opinions in two respects. First, in calculating Southwest's damages from the system outage, Rusnak did not include the cost of more than one type of compensation per customer. Southwest perceives that she is opining that the insurance policy did not allow multiple compensations and seeks to exclude that opinion as an impermissible legal opinion. (P. Rusnak Br. at 2.) Second, Southwest seeks to exclude any opinion by Rusnak that the policy required expenses to be "necessary." (*Id.*)

Based on her review of materials provided to her, Rusnak opined that Southwest's damages expert arrived at an overstated calculation of expenses incurred and lost income. (Dkt. No. 124 ("D. Rusnak App.") at 6.) She opined that the damages calculation should be less, in part because her calculation did not provide

-9-

for a single customer receiving multiple different kinds of compensation—e.g., travel credits, discount codes, cover refunds, and loyalty points. She reached her decision to exclude costs based on her review of industry standards and her assessment that airlines typically do not compensate customers in more than one way.

Rusnak also disagreed with Southwest's inclusion of additional advertising costs as damages that flowed from the system outage. In her view, Southwest's decision to extend for eight days a fare sale that was set to end the day after the outage began was a voluntary one, making the additional advertising costs associated with that fare sale an expense that did not naturally flow from the system failure. Southwest asserts that by making that decision to exclude the advertising costs, Rusnak is opining that the policy requires that loss be "necessary."

Southwest's attack on Rusnak as offering excludable legal opinions is not well founded. Liberty has not offered Rusnak to offer a purely legal opinion about insurance coverage, and she was clear in her deposition that she is not purporting to do so. Rusnak is permitted to testify that giving customers multiple types of compensation falls outside industry norms and that her damages calculation therefore excluded those costs. *See America Can!*, 597 F. Supp. 3d at 1047. Likewise, Rusnak is permitted to testify that she excluded the advertising costs from her damages model because it did not appear to be a natural and necessary consequence of the system outage. *See Southwest*, 90 F.4th at 854–55. Rusnak does not purport to interpret the policy, and her reasons for excluding certain expenses from her damages

model is best explored through "[v]igorous cross-examination" and contrary evidence. *See America Can!*, 597 F. Supp. 3d at 1044; *see also Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-00134-JRG, 2017 WL 2844646, at *2 (E.D. Tex. May 19, 2017). Southwest's motion to exclude Rusnak's opinions is therefore denied.

**B.    Liberty's motion to exclude Southwest's expert witnesses**

Liberty seeks to exclude, either in whole or in part, expert testimony by Bradley, Grudzien, Thaler, and Quinn.[1] The Court considers them in turn.

**1.    Daniel Bradley and Kevin Grudzien**

Southwest identifies Bradley and Grudzien as third-party accountants who assisted Southwest in measuring, preparing, and certifying its loss for the claim submitted to Liberty. (P. Resp. App. 5.) Southwest disclosed them as non-retained experts in January 2022. (*Id.*) In its motion, Liberty argues that they should be excluded either because they are actually retained experts for whom Southwest did not disclose a report as required by Fed. R. Civ. P. 26(a)(2)(B) or, alternatively, because Southwest did not provide a summary of facts and opinions as required by Fed. R. Civ. P. 26(a)(2)(C). (D. Br. at 4.)

---

[1] Liberty additionally identified Joseph Chairez and Andrew Ryan in its motion but, in reply, withdraws its request to exclude them at this point. (D. Reply at 13.) Southwest has identified Ryan as an expert on attorney's fees, and the parties agree that the matter should be addressed after trial. (*Id.*) As for Chairez, Liberty reports that the parties reached an agreement whereby Southwest would call Chairez, if at all, only as a rebuttal witness and that Liberty would be allowed to depose Chairez prior to any trial testimony. (*Id.*)

Liberty's assertion that Bradley and Grudzien should be treated as retained experts is based solely on the fact that they have been compensated for their time. (D. Br. at 4.) It points to their respective deposition testimony in which they say that they have been paid "on this matter." (*See* Dkt. No. 113-4 ("D. App.") at 638-39, 633-34.) The cited testimony, however, does not make it clear that either man was "retained or specially employed to provide expert testimony in the case[.]" Fed. R. Civ. P. 26(a)(2)(B).[2] Among other things, the testimony does not establish whether "on this matter" refers to this litigation or the events underlying the lawsuit. Southwest disclosed Bradley and Grudzien as non-retained experts and defends the motion on the basis that they are non-retained experts, and Liberty's citation testimony showing that they have been paid in this matter does not prove that they are instead retained experts.

Liberty next contends that Bradley and Grudzien should be excluded from providing expert testimony because Southwest's disclosures did not satisfy its obligations for non-retained experts. (D. Br. at 4.) Under Rule 26(a)(2)(C), a party disclosing a non-retained expert need not provide a report. It must, however, state in its disclosure the subject matter on which the witness is expected to present expert testimony and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C); *see Galvez v. KLLM Transp. Servs., LLC*, 575 F.

---

[2] It seems undisputed that they are not Southwest employees whose duties regularly involve giving expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(B).

Supp. 3d 748, 756 (N.D. Tex. 2021). "This rule is intended to ensure that an opposing party has some notice of what an expert witness who is not retained or specially employed will testify about." *Galvez*, 575 F. Supp. 3d at 756. "The disclosure must, at the very least, state opinions, not merely topics of testimony, and contain . . . a summary of the facts upon which the opinions are based." *Id.* (internal quotation marks omitted).

In arguing that Southwest's disclosures were insufficient, Liberty points only to Southwest's January 2022 disclosures. (*See* D. Br. at 4-7.) Southwest correctly notes that Liberty's brief is largely recycled from a motion filed in February 2022 advancing the same arguments and seeking the same relief. (*See* Dkt. No. 74-1 at 4-8.) But Southwest later supplemented its disclosures to identify several specific opinions these witnesses may provide. (P. Resp. App. 8-13.) Additionally, the supplement states that their testimony will be based on the claim file and communications between Southwest, its brokers, and forensic accountants and Liberty and its representatives. (*Id.*) After conference on the supplemental disclosures, Southwest's counsel characterized Liberty's position as accepting that the supplemental disclosures went "a long way to addressing the issues raised" in its February 2022 motion but that Liberty would reserve judgment whether to withdraw its motion until after completing Bradley's and Grudzien's scheduled depositions. (P. Resp. App. 27.) There is no evidence that Liberty took issue with that characterization, either then or now. (*See* P. Resp. App. 26-27; *see also* D. Reply.)

In consideration of Southwest's recitation of facts in response to the instant motion, one might expect that Liberty would address Southwest's supplemental disclosures and attorney conferences in its instant motion, but certainly in reply. But Liberty wholly ignores them in its motion and only acknowledges the supplemental disclosures in passing in reply. (*See* D. Reply at 8.) The Court is troubled by this. Liberty filed a motion in October 2024 asking the Court to exclude expert testimony from Bradley and Grudzien on the basis that Southwest's January 2022 disclosures were inadequate. (*See* Dr. Br. at 4-7 & nn. 20, 23 (relying on D. App. 62-63).) The record reflects that, in doing so, Liberty essentially copied its February 2022 briefing and completely ignored Southwests' supplemental disclosures that responded— seemingly to Liberty's satisfaction—the arguments Liberty made in the prior brief and re-urged in the instant motion. In reply, rather than explain why it has asked the Court to exclude witnesses as inadequately disclosed without regard to Southwest's supplementations, Liberty acknowledges the supplementations only to curtly argue that these supplemented opinions exceed what is permissible from these non-retained experts.[3]

---

[3] Liberty argues for the first time in reply that Bradley's and Grudzien's supplemented disclosures go beyond opinions they formed while involved in the matters underlying this case. The Court generally does not consider new arguments raised in a reply. *Baker v. Aetna Life Ins. Co.*, 228 F. Supp. 3d 764, 770 n.7 (N.D. Tex. 2017) ("[T]he court will not consider an argument raised for the first time in a reply brief." (internal quotation marks omitted)). The supplemental disclosure having been made more than two years earlier and having deposed both men, Liberty was equipped to argue in its opening brief that the opinions exceeded those formed while performing work for Southwest. It did not do so, and it waived the argument. *See Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 626 (N.D. Tex. 2022) ("Arguments raised for the first time in a reply brief are generally

This is not a case in which counsel made arguments in the October 2024 motion without awareness of the supplementation and conferences in February 2024, as the same attorney was both a participant in the 2022 conferences and signed Liberty's instant motion and brief.  Renewing the February 2022 arguments in October 2024 in conscious disregard of Southwest's supplemental disclosures and attorney conferences is seemingly inconsistent with counsel's certifications made by operation of Fed. R. Civ. P. 11(b)(2) and (3).

By ignoring the supplemented disclosures Southwest provided for non-retained experts Bradley and Gruzdien, Liberty has not shown that the disclosures are inadequate.  Therefore, its request to have these witnesses precluded from providing expert testimony as non-retained experts is denied.

### 2. Gregory Thaler

Liberty moves to exclude portions of his opinion testimony on the basis that his proposed testimony is merely a conduit for inadmissible hearsay and beyond his expertise as an accountant.  (*See* D. Br. at 12-20.)

"While experts are allowed to rely on hearsay in forming their opinions, 'their testimony is not a vehicle by which evidence that is otherwise inadmissible may be introduced.'"  *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 413 (N.D. Tex. 2016) (quoting *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570

---

waived, as the responding party is deprived of the opportunity to respond to the new argument." (internal quotation marks omitted)).

(E.D. Tex. 2014)); *see also Petty v. Venable, Baetjer, Howard & Civiletti, LLP*, No. CIV.A.3:02-CV-1449-D, 2004 WL 1629774, at *8 (N.D. Tex. July 20, 2004) ("Rule 703 . . . is not an open door to all inadmissible evidence disguised as expert opinion. Although experts are sometimes allowed to refer to hearsay evidence as a basis for their testimony, such hearsay must be the type of evidence reasonably relied upon by experts in the particular field in forming opinions or inferences on the subject." (quoting *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987))).

      Liberty contends that Thaler's report is simply a "mouthpiece" through which Southwest seeks to introduce hearsay testimony. (*See* D. Br. at 13.) It refers generally to Thaler as providing "summaries of Southwest's speculative beliefs" and "regurgitat[ing]" conclusions and opinions supplied to him by Southwest. (*Id.* at 13-14.) Liberty does not point to any specific instance in which it believes Thaler's proposed testimony is used as a mere conduit for inadmissible hearsay, and the Court's review of his report suggests otherwise. If at trial Southwest attempts to adduce inadmissible hearsay from Thaler, it may at that time seek to exclude the testimony or request an appropriate jury instruction from the Court. Liberty has not shown that Thaler's testimony should be excluded pre-trial on this basis.

      Liberty next asserts that Thaler's testimony should be excluded because he does not state that an expert in his field would reasonably rely on the inadmissible information upon which he relies. (D. Br. at 14.) Thaler states in a declaration, however, that in his 30 years as a consultant or expert witness, he has become

familiar with the types of information that others like him rely on when forming opinions. (P. App. 118.) He has further explained in response to Liberty's motion that the categories of information he relied on are the types commonly relied on by experts in his field. (P. App. 118-20.) Thaler's testimony is not subject to pretrial exclusion on this basis.

Finally, Liberty asserts that Thaler's proposed testimony should be excluded because it goes beyond the scope of his expertise as an accountant. (D. Br. at 14-20.) It identifies 27 parts of Thaler's report by paragraph (or footnote) number and asserts that opinions expressed in these portions should be excluded "because the facts and data he relies on and the conclusions in support of his opinions are not sufficiently developed or explained." (D. Br. at 17.) Liberty contends that these portions of Thaler's report are simply his ipse dixit assertions. (*Id.* at 18.) Liberty's non-specific objection is overruled, and it may challenge these opinions in cross-examination. *See America Can!*, 597 F. Supp. 3d at 1044.

### 3. Michael Quinn

Liberty moves the Court to exclude portions of Quinn's report, stating generally that his opinions are not based on facts or data but are instead based on speculation and conjecture. (D. Br. at 20-21.) It contends that Quinn's report from pages 13 to 44 "goes through a litany of what he views as the law applying to insurer bad faith and discussing unrelated hypotheticals" and asserts generally that his conclusions lack any foundation. (*Id.* at 21.) Liberty identifies no specific opinion

rendered by Quinn that should be excluded. After considering the parties' arguments and reviewing Quinn's report, the Court concludes that Liberty's motion should be denied in this respect.

## IV. CONCLUSION

Southwest's Motion to Partially Exclude Opinions of Steven Plitt (Dkt. No. 109) and Motion to Partially Exclude Opinions of Shannon Rusnak (Dkt. No. 108) are **DENIED**, and Liberty's Motion to Exclude Plaintiff's Testifying Experts (Dkt. No. 113-2) is **DENIED**.

**SO ORDERED** on December 2, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE